UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                                          Chapter 13
Anthony M. Schley and                                                         Case No. 08-26146-svk
Julie A. Schley,
        Debtors.

MEMORANDUM DECISION AND ORDER

      The Debtors in this Chapter 13 case claim that the fact that one of the Debtors is an occupational therapist employed by a school system, and is only paid nine months of the year, constitutes "special circumstances" permitting an adjustment of their projected disposable income. The Chapter 13 Trustee disagrees and has objected to confirmation of the Chapter 13 plan.

      The Trustee's objection is based on § 1325(b)(1)(B) of the Bankruptcy Code, which provides, in pertinent part:

> If the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ... (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan.

Although the Bankruptcy Code does not define projected disposable income, it does define disposable income as: "current monthly income received by the debtor . . . less [certain expenses]." 11 U.S.C. § 1325(b)(2). The Code defines current monthly income ("CMI") in § 101(10A) as "the average monthly income from all sources that the debtor receives . . . derived during the 6 month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case . . ." Form B22C provides the framework for calculating a debtor's CMI.

      This Court recently held that a debtor's bonus received in the six-month period prior to filing must be included in the calculation of CMI, and not averaged over the entire twelve months of the year. *In re Cruz,* 08-23419-svk (Bankr. E.D. Wis. Aug. 11, 2008). The holding was based on the Court's previous rulings that "projected disposable income" is the current monthly income calculated on Form B22C, projected for the term of the Chapter 13 plan. *In re Spraggins*, 386 B.R. 221 (Bankr. E.D. Wis. 2008) (income from Form B22C, rather than Schedule I, should be used to calculate projected disposable income); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006) (BAPCPA has taken away bankruptcy courts' discretion with respect to the means test). The Court recognizes that there are other schools of thought in calculating projected disposable income, and some courts might consider allowing an adjustment of projected disposable income due to the seasonal nature of the debtor's job. However, a growing number of courts, including the District Court in the Western District of Wisconsin and

the Ninth Circuit Court of Appeals, have adopted a "plain meaning" view of projected disposable income that simply multiplies the CMI calculated on Form B22C over the applicable commitment period. *See, e.g.*, *Maney v. Kagenveama (In re Kagenveama)*, 527 F.3d 990, 994 (9th Cir. 2008) (plain meaning of statute compels link between "disposable income" and "projected disposable income"), *amended and superseded by* --- F.3d ---, 2008 WL 2485570 (9th Cir. June 23, 2008) (adding citation to *In re Pak*, 378 B.R. 257, 267 (B.A.P. 9th Cir. 2007)); *Mancl v. Chatterton (In re Mancl)*, 381 B.R. 537, 541 (W.D. Wis. 2008) ("only reasonable interpretation of the phrase 'projected disposable income' is current monthly income projected forward"). Under this interpretation, projected disposable income is determined directly from CMI, and is not adjusted for the fact that the debtor had unusually high or unusually low income in the six months prior to the petition. Although this analysis can favor the debtor who has less CMI than Schedule I and J disposable monthly income, it can also require higher payments of a debtor who has more CMI than actual disposable income, such as the debtor in *Cruz* and the Debtors in this case.

No claim was made in *Cruz* that the debtor's bonus constituted "special circumstances" under § 707(b)(2)(B) of the Bankruptcy Code. That section provides that the presumption of abuse may be rebutted by "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [*sic*] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). In order to justify "special circumstances," a debtor must "itemize each additional expense or adjustment of income" and provide a detailed explanation of its reasonableness and necessity. 11 U.S.C. § 707(b)(2)(B)(ii). The debtor is also required to "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments are required."[1] 11 U.S.C. § 707(b)(2)(B)(iii).

Beyond the special circumstances expressly described in the statute, i.e., a serious medical condition or active duty in the Armed Forces, "debtors with lost jobs, domestic relations problems, children in trouble, natural disasters, [and] car wrecks" may qualify. *See* Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* § 478.1 (2000 & Supp. 2007). Judge Lundin points out that "special circumstances is not as harshly worded as barriers and exceptions elsewhere in the Bankruptcy Code," such as undue hardship under § 523(a)(8). *Id*. On the other hand, under the principle of *ejusdem generis*, the examples given in § 707(b)(2)(B) of a serious medical condition or active military service are instructive of the kinds of "special circumstances" that would appropriately apply to reduce the current monthly income. *See In re Hanks*, 362 B.R. 494, 501 n. 28 (Bankr. D. Utah 2007) (citing *In re Ludwig*, 345 B.R. 310, 318 (Bankr. D. Colo. 2006) (discussing the principle of *ejusdem generis* that "general terms are applied only to those things of the same general kind or class as those specifically mentioned").

The Debtors argue that the fact that one of them works only nine months of the year for the school system constitutes special circumstances, but they have not cited any authority in which a debtor's "seasonal" employment qualified for the provision. Congress chose to define CMI using a six month, not one year, calculation of income, and there is no evidence that teachers or other debtors who work only part of the year were intended to be exempt from the means test.

---

[1] No such affidavit or declaration under penalty of perjury has been filed here.

The Debtors filed their petition in June, and both Debtors had received income in the entire six-month period prior to filing. *In re Beasley*, 342 B.R. 280 (Bankr. C.D. Ill. 2006) involved the flip side of this coin: a teacher's income when the case was filed in December. The trustee argued that the applicable commitment period should be extended in light of the fact that when the teacher's actual salary (as opposed to CMI) was considered, the debtors' income was above the median. The court overruled the trustee's objection, finding that there was no room for discretion in this determination:

> Congress could have drafted § 1325(b)(4) so that the statutory calculation of the applicable commitment period would raise only a presumption of what the period should be, reserving discretion in the bankruptcy courts to review actual figures and make the final determination. Congress chose, however, not to make the calculation set forth in § 1325(b)(4) and on Form B22C merely presumptive and this Court has no choice but to follow the law as written . . . . In making this finding, the Court is cognizant of the fact that strict compliance with the definition of "current monthly income" means that some debtors with high but irregular income may be able to avoid the imposition of the longer payment period by the timing of their filings, while debtors with lower incomes are forced to pay for five years. That may be unfair, but that is what the statute requires as it is currently written. The remedy for that problem is legislative, not judicial.

*Id.* at 284-85. Although the *Beasley* court was interpreting a different part of the statute than at issue here, this Court shares the sentiment that if Congress had intended that seasonal work qualified as a "special circumstance," it would have been easy to say so.

Moreover, the fact that § 707(b)(2)(B) defines "special circumstances" as those for which there is "no reasonable alternative" militates against the Debtors' argument. In *In re Crego*, 387 B.R. 25 (Bankr. E.D. Wis. 2008), this Court found special circumstances where the debtors filed a joint petition but were living separately and in the process of divorce. The debtors established that they lacked any reasonable alternative to incurring the expenses of separate households, since continued cohabitation would burden the family and could jeopardize the welfare of their child. Here, reasonable alternatives appear to exist. The Debtor could reasonably be expected to work a summer job, for example, in order to supplement her income. While teachers may be relegated to working only nine months of the year, occupational therapists like the Debtor can work for employers other than a school system, and earn income for twelve months of the year.

Notably, the Debtors have not filed any affidavit or declaration to support their claim of "special circumstances." Instead, they have relied on their attorney's response to the Trustee's objection to confirmation. That response merely states in a conclusory manner that the Debtor's lack of income during the summer months justifies a $1,428 per month deduction in addition to the expenses allowed on Form B22C. A review of the Debtors' Schedules and Statement of Financial Affairs reveals that both Debtors enjoy steady, long term jobs with combined income of over $119,000 in the year before filing. They also have significant credit card obligations and both entered into car leases in 2007, including a lease of a 2007 GMC Acadia, requiring lease payments of $510 per month. While the Court will not foreclose a debtor from one day demonstrating that seasonal income together with other factors qualify as "special

3

circumstances,"[2] the Debtors have not carried their burden of proving special circumstances in this case.

      IT IS THEREFORE ORDERED: The Trustee's Objection to Confirmation is sustained. The Debtors shall file an amended Plan and amended Form B22C within 30 days of the date of this Order, or this case will be dismissed.

Date: August 22, 2008

                                            By the Court:

                                            /s/ Susan V. Kelley
                                            Susan V. Kelley
                                            U.S. Bankruptcy Judge

---

[2] For example, if, due to some anomaly, a teacher's expenses increased in the summer and the teacher was not able to supplement her income to cover those expenses, a special circumstances claim might succeed.

4